UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOMENIC KENNESON | : | No. 3:14-cv-01184 (MPS) |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| JOHNSON & JOHNSON, INC., | : | |
| ETHICON, INC., | : | |
| SAINT MARY'S HOSPITAL, INC., | : | |
|     Defendants. | : | April 23, 2015 |

**MEMORANDUM OF DECISION**

**I.     Introduction**

Plaintiff Domenic Kenneson ("Kenneson"), a citizen of Connecticut, underwent hernia repair surgery at Saint Mary's Hospital ("Saint Mary's") in Waterbury in May 2011. The surgery involved the implantation of "Prolene Mesh," a medical device that Kenneson alleges is manufactured and/or distributed by defendants Johnson & Johnson, Inc., and Ethicon, Inc., both citizens of New Jersey. Kenneson claims that he experienced complications caused by defects in the Prolene Mesh, which was removed in a subsequent surgery in March 2013. On July 31, 2014, he filed a suit in Connecticut Superior Court against Johnson & Johnson and Ethicon, under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m *et seq.*, and against Saint Mary's for negligence and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA").

On August 14, 2014, Johnson & Johnson and Ethicon removed the case to this Court, claiming that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the only Connecticut defendant, Saint Mary's, was fraudulently joined in Kenneson's complaint. On

September 12, 2014, Kenneson moved to remand the case to state court, arguing that diversity jurisdiction is absent, in that Saint Mary's is both a non-diverse defendant (sharing Connecticut citizenship with Kenneson) and a forum defendant seeking to remove the case from the courts of its own state. Kenneson has also requested an award of attorney's fees incurred as a result of the defendants' removal of the case, on the ground that the defendants lacked an objectively reasonable basis for the removal. In opposing the motion to remand, the defendants repeat their argument that Saint Mary's has been fraudulently joined in this suit. As set forth herein, the Court rejects the defendants' fraudulent joinder argument and therefore will grant the motion to remand, except as to the request for attorney's fees.

## II. Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441. "Subject matter jurisdiction . . . based on 28 U.S.C. § 1332 . . . requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117-18 (2d Cir. 2014). In addition, under the "forum defendant rule," "a civil action may be removed to the district court on diversity grounds 'only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Value Health Care Servs., LLC v. PARCC Health Care, Inc.*, No. 3:11-CV-00523 (JCH), 2011 WL 2417106, at *2 (D. Conn. June 13, 2011) (quoting 28 U.S.C. § 1441(b)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "A motion to remand the case on the basis of any defect other

than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." *Id.*

But "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461.[1]

"The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* "All uncertainties in applicable state law are resolved in favor of the plaintiff, and the complaint is subjected to 'less searching scrutiny than on a motion to dismiss for failure to state a claim.'" *Campisi v. Swissport Cargo Servs., LP*, No. 09-CV-01507 (JMA), 2010 WL 375878, at *2 (E.D.N.Y. Jan. 26, 2010) (quoting *Intershoe, Inc. v. Filantro SPA*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000); *see also Oliva v. Bristol-Myers Squibb Co.*, No. 3:05-CV-00486 (JCH), 2005 WL 3455121, at *1 (D. Conn. Dec. 16, 2005) ("To show that a 'fraudulent joinder' has occurred, the defendants must do more than show that the plaintiff has failed to state a claim upon which relief can be granted.").

---

[1] The case law frequently refers to a "non-diverse defendant," suggesting a connection between the doctrine of fraudulent joinder and the complete diversity requirement of 28 U.S.C. § 1332. But where, as here, the defendant at issue is both non-diverse and a forum resident, the doctrine also permits the Court to overlook the "forum defendant rule" of 28 U.S.C. § 1441(b) when fraudulent joinder has been demonstrated. *See, e.g.*, *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984) ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties who are not truly related to the cause of action but who happen to be residents of the state where the action is brought.") (cited with approval in *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

**III.     Discussion**

The defendants do not dispute that Saint Mary's is a citizen of Connecticut, as is Kenneson, and therefore the inclusion of Saint Mary's in the complaint would ordinarily preclude federal diversity jurisdiction under both the "complete diversity" requirement of 28 U.S.C. § 1332 and the "forum defendant" rule of 28 U.S.C. § 1441(b). Nor do the defendants dispute that Kenneson filed a timely motion to remand on September 12, 2014, within thirty days of the August 14, 2014 notice of removal. Instead, the defendants argue that Saint Mary's citizenship should be disregarded under the fraudulent joinder doctrine because Kenneson has no possibility of stating a cause of action in state court against Saint Mary's under either Count Nine (labeled as a negligence claim) or Count Ten (brought under CUTPA) of the complaint originally filed in state court.[2] The Court disagrees and therefore will grant the motion to remand.

Count Nine contains several allegations related to "negligence and carelessness" on the part of Saint Mary's, which are discussed in greater detail below. Compl. at 12 ¶ 27. The defendants have made three arguments as to why Count Nine cannot possibly state a cause of action under Connecticut law. Although the defendants correctly identify significant limitations on and obstacles to Kenneson's recovery under Count Nine, Kenneson still has some possibility of proceeding to success on the merits of at least one theory of liability contained within Count Nine, which is all that is required to conclude that Saint Mary's was not fraudulently joined. The Court therefore need not address the parties' arguments with regard to the CUTPA claim in Count Ten.

---

[2] The Court considers Kenneson's original complaint, rather than his amended complaint. *Deming v. Nationwide Mut. Ins. Co.*, No. 3:03-CV-01225 (CFD), 2004 WL 332741, at *4 (D. Conn. Feb. 14, 2004) ("[I]t is well-settled that the court should analyze the pleadings in effect at the time of removal when undertaking a fraudulent joinder analysis.").

First, the defendants assert that Count Nine, despite being "labeled as a common law negligence claim," actually "sound[s] in product liability." Defs.'s Br. at 6. They then argue that Count Nine has no possibility of stating a cause of action for product liability because Saint Mary's was not a seller of any product to Kenneson. Although the defendants appear to be correct that Saint Mary's was not a product seller, the Court does not agree that Count Nine must be read as a product liability claim, in part or in whole.

It is true that the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m *et seq.* ("CPLA"), applies only to sales of products, not to services, and binding precedent holds that surgical implantation of a medical device is a service. *Zbras v. St. Vincent's Med. Ctr.*, 880 A.2d 999, 1002 (Conn. App. 2005). But the mere fact that Kenneson cannot sue Saint Mary's under the CPLA does not mean that Kenneson cannot sue Saint Mary's for negligence at all. "Since [the CPLA] provides only that it is the exclusive remedy for 'claims against product sellers' . . . the statute does not foreclose common law claims against those who are not product sellers . . . ." *Burkert v. Petrol Plus of Naugatuck, Inc.*, 579 A.2d 26, 31 (Conn. 1990); *see also Zichichi v. Middlesex Mem'l Hosp.*, 528 A.2d 805, 808, 810 (Conn. 1987) (holding that "under § 19a-280 the plaintiff is precluded from asserting a product liability claim arising out of the transfer of blood by a hospital to a patient" because "the plain and unambiguous wording of that statute provides that the provision of blood is to be considered a medical service not a sale," but noting that "Section 19a-280 does not protect defendants from liability for negligence . . . [i]f a plaintiff can show that the defect in the blood could reasonably have been detected or removed").

Although Count Nine mentions a product, i.e., Prolene Mesh, and alleges that Kenneson was the "end user" of Prolene Mesh, Compl. at 12 ¶ 24, Count Nine also repeatedly references "negligence" of many kinds on the part of Saint Mary's, makes no mention of strict liability, and

5

notably omits any reference to the CPLA while other counts in the complaint do mention the CPLA. Thus, the fact that Saint Mary's is not a seller covered by the CPLA does not render Count Nine an impossible cause of action in state court.

The defendants next argue that Count Nine, if viewed as a negligence claim, would have no possibility of stating a cause of action in state court because the plaintiffs did not attach to the complaint a "certificate of good faith" and accompanying opinion letter from a similar health care provider, which is a prerequisite to bringing a medical negligence claim under Conn. Gen. Stat. § 52-190a.[3] The plaintiff, while not denying that a certificate of good faith has not been attached, argues that the claim against Saint Mary's is for ordinary negligence, not professional negligence, and therefore does not require a certificate.[4] Even if the defendants are correct that a certificate is required, the plaintiff's failure to attach a certificate does not permit removal of this case.

The Court is unaware of any case law interpreting the requirements of Conn. Gen. Stat. § 52-190a in relation to fraudulent joinder and the removability of a case. In general, however, "[r]emoval statutes are to be construed narrowly and uncertainties are to be resolved in favor of remand, in order to promote the goals of federalism, the limited jurisdiction of federal courts, and the right of plaintiffs to choose the forum in which to bring suit." *In re World Trade Ctr. Disaster Site Litig.*, 270 F. Supp. 2d 357, 366 (S.D.N.Y. 2003). Further, it is the defendants'

---

[3] That statute provides, in relevant part:
> No civil action or apportionment complaint shall be filed to recover damages resulting . . . from the negligence of a health care provider, unless the . . . complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action . . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion . . . and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate.

Conn. Gen. Stat. § 52-190a(a).

[4] Although this argument does not appear in Kenneson's brief in support of remand, he has raised it in his opposition to the defendants' later-filed motion to dismiss. ECF No. 37.

burden to demonstrate fraudulent joinder by clear and convincing evidence, and "all factual *and legal* issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461 (emphasis added). The defendants have not carried their burden here.

"The failure to provide a written opinion letter, or the attachment of a written opinion letter that does not comply with § 52-190a, constitutes insufficient process." *Morgan v. Hartford Hosp.*, 21 A.3d 451, 459 (Conn. 2011). Under *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41 (1939), a plaintiff's failure to serve process on a diversity-defeating defendant in state court generally does not permit the other defendants to remove the case to federal court on the basis of diversity, which remains the prevailing view in the federal courts despite post-*Pullman* changes to the removal statute. *See Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 12-CV-08579 (RWS), 2013 WL 3863887, at *2 (S.D.N.Y. July 24, 2013) ("[M]ere failure to serve a resident defendant properly named in the complaint [before a motion to remove is made] will not permit removal.") (second alteration in original); *City of Syracuse v. Loomis Armored US, LLC*, No. 5:11-CV-00744 (MAD), 2011 WL 6318370, at *4-5 (N.D.N.Y. Dec. 15, 2011) ("[D]espite the 'joined and served' provision of section 1441(b), the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal.") (quoting *Pecherski v. General Motors Corp.,* 636 F.2d 1156, 1160 (8th Cir. 1981)); *Worthy v. Schering Corp.*, 607 F. Supp. 653, 655 (E.D.N.Y. 1985) ("[T]he courts in this Circuit have held that a diversity action cannot be removed when a resident defendant is named in the complaint but has not been served.").

Although the *Pullman* rule is typically applied to situations in which a diversity-defeating defendant has not yet been served, rather than the instant situation in which the defendant contests the sufficiency of the process that was served, that distinction is not a meaningful one in

this case. In both situations, it is neither certain nor impossible that the diversity-defeating defendant will be properly served at a later date. The defendants have not shown that Kenneson is incapable of amending his pleadings to comply with Section 52-190a. In general, Connecticut courts may grant leave for a plaintiff to file an amended pleading at any time. Conn. Practice Book § 10-60; *see also California Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 F. App'x 727, 729-30 (9th Cir. 2001) (rejecting fraudulent joinder claim because it was "very possible that the state court would have granted plaintiffs leave to amend their complaint, allowing them to address the deficiencies the defendant manufacturers assert"). Although some Connecticut superior courts have questioned whether and under what circumstances they may grant leave to attach a proper good faith certificate once a motion to dismiss for insufficient process has been filed, this remains an open question under Connecticut law. *See Votre v. County Obstetrics & Gynecology Group, P.C.*, 966 A.2d 813, 822 (Conn. App. 2009) (noting the possibility that an amendment adding a certificate of good faith might be appropriate in certain situations); *Vines v. Singh*, No. CV146023368S, 2014 WL 7593358, at *3 (Conn. Super. Ct. Dec. 9, 2014) (listing cases and noting the ongoing uncertainty); *Bennett v. New Milford Hosp., Inc.*, 12 A.3d 865, 884 n.17 (Conn. 2011) (acknowledging the uncertainty without resolving it).

Further, even if amendment were unavailable under Connecticut law and the state courts were bound to dismiss Kenneson's case, the Court doubts whether removal would be appropriate here under a theory of fraudulent joinder. A dismissal for failure to comply with Section 52-190a would be without prejudice, *see Bennett v. New Milford Hosp., Inc.*, 12 A.3d 865, 884 (Conn. 2011) ("[T]he legislature envisioned the dismissal [under Section 52-190a] as being without prejudice . . . and even if the statute of limitations has run, relief may well be available under the accidental failure of suit statute, General Statutes § 52-592."), and would not necessarily reflect

that Saint Mary's is a "part[y] with no real connection with the controversy" or that Kenneson has "no possibility" of "stat[ing] a cause of action against [it] in state court," *Pampillonia*, 138 F.3d at 461. Although in some cases a certificate may be absent because a claim is frivolous and therefore the plaintiff could not convince a similar health care provider to produce a letter of support—indeed, that is the scenario at which Section 52-190a is aimed, *see Morgan*, 21 A.3d at 457—the defendants have not shown that that is true here. Saint Mary's does indeed appear to have a real connection with the controversy, as Kenneson alleges that his surgery was performed there, and Kenneson's failure to attach a certificate could be attributable to several causes unrelated to the merits of his claim against Saint Mary's.

The defendants' sole argument against the merits of a negligence claim against Saint Mary's (appearing in the portion of the defendants' brief that addresses the CUTPA claim) is the holding of *Sherwood v. Danbury Hospital*, 896 A.2d 777 (Conn. 2006), which involved a medical malpractice claim against a hospital by a patient who contracted HIV from blood transfusions. Although *Sherwood* limits the types of negligence claims that Kenneson can state against Saint Mary's, it leaves Kenneson at least one possible theory of negligence.[5]

In *Sherwood*, the Connecticut Supreme Court rejected the plaintiff's malpractice claim against the hospital because "it is solely the responsibility of the nonemployee treating physician, and not the duty of the hospital, to inform the patient of the risks and benefits of, and alternatives to, a proposed medical procedure, and to obtain the patient's informed consent before performing any such procedure." *Id.* at 791. Further, a hospital is under no obligation to inform patients of

---

[5] Kenneson makes no attempt to allege, even by conclusory reference to an employment or agency relationship between his physicians and Saint Mary's, that Saint Mary's should be held *vicariously* liable for the physicians' actions. The Court therefore does not address this additional possibility. *See Sherwood*, 896 A.2d at 791 n.19 ("Although, in *Petriello*, we left open the possibility that extensive involvement of a hospital-employed nurse or physician in the patient's preoperative care might give rise to a vicarious duty on the part of the hospital to obtain informed consent, the plaintiff in the present case has not alleged that any employee of the defendant was so extensively involved in her preoperative care that the defendant might be deemed to be vicariously liable for that employee's failure to obtain the plaintiff's informed consent.").

9

risks "either directly or *indirectly*" (that is, by informing treating physicians of the risks), *id.* at 782 n.8 (emphasis added), because treating physicians are generally obligated to obtain for themselves information about risks to share with patients, *id.* at 795 ("[W]e see no reason to impose a legal duty on the defendant to make [a physician] aware of information that, according to the plaintiff's experts, [the physician] himself was obligated to obtain."), except where "certain risks or conditions . . . are known to the hospital and not known to the attending physician," and "it would be unreasonable for the hospital to presume that the physician is aware of the particular risk or condition," *id.* at 796 n.26.

Many of Kenneson's negligence claims are unsupportable after *Sherwood*, in that they depend on Saint Mary's having a duty to inform physicians of risks associated with Prolene Mesh implantation or a duty to investigate the risks of Prolene Mesh implantation so as to better inform physicians of those risks, without any allegations to suggest that the physicians themselves were unable to investigate the risks.[6] Although *Sherwood* leaves open the possibility of a negligence claim where a hospital knew or should have known about a risk and failed to take reasonable actions itself—aside from informing physicians or patients—to mitigate that risk,[7]

---

[6] The Court notes, without addressing the merits of specific allegations, that nearly all of Kenneson's allegations against Saint Mary's amount to various articulations of the same two underlying assertions: (1) that Saint Mary's should have had protocols for monitoring potential risks involved with Prolene Mesh implantation and (2) that Saint Mary's should have alerted practitioners to those risks. *See* Compl. at 12 ¶ 27(a) ("failed to establish an effective dissemination policy or procedure that would have alerted attending physicians . . . about products . . . that were potentially dangerous"); *id.* ¶ 27(b) ("failed to establish an effective internal tracking policy or procedure that would have alerted it and its attending physicians . . . to products that were potentially dangerous"); *id.* ¶ 27(c) ("failed to establish a sufficient internal tracking system that would have alerted it and its attending physicians . . . to problems that its patients were having with specific implantable medical devices"; *id.* at 13 ¶ 27(e) ("failed to implement reasonable policies and procedures to track the efficacy of the implantable medical devices . . . to better educate its attending physicians"); *id.* ¶ 27(f) ("failed to implement reasonable policies and procedures to ensure proper dissemination and distribution of information to its attending physicians . . . about medical devices and/or products that were potentially dangerous"); *id.* ¶ 27(g) ("failed to implement reasonable policies and procedures . . . to track the efficacy of products . . . after they were implanted . . . in order to bring known, documented or associated complications . . . to light more quickly").

[7] The *Sherwood* opinion makes clear that the case deals only with a hospital's duty to obtain informed consent—that is, whether it "provide[d] the patient with the information which a reasonable patient would have found material for making a decision whether to embark upon a contemplated course of therapy." *Sherwood*, 896 A.2d at 788. The Connecticut Supreme Court noted that Sherwood's "negligence claim is not founded on the [hospital's] alleged lack

Kenneson has made no such allegation here. And indeed, it is difficult to imagine, under the factual scenario presented, what sort of direct actions Saint Mary's reasonably should have taken to correct the alleged defects or otherwise mitigate the risks associated with Prolene Mesh implantation.

Kenneson does, however, allege in substance that Saint Mary's breached its duty of care by giving physicians access to facilities to perform the surgery, in light of the physicians' histories of using dangerous products in surgeries, which is at least a possible claim under Connecticut law. Specifically, Kenneson alleges that Saint Mary's "improperly permitted some of its attending physicians, affiliated doctors and/or other privileged healthcare practitioners who were using implantable medical devices and/or products that were potentially dangerous, defective, recalled and/or accompanied by post-manufacturing FDA warnings to maintain their hospital privileges." Compl. at 13 ¶ 27(d).[8] This theory of negligence—often called "negligent credentialing"—is based on a hospital's duty of care in granting physicians privileges to use the hospital's facilities generally or for certain procedures, and has been recognized by Connecticut courts. *Neff v. Johnson Mem'l Hosp.*, 889 A.2d 921, 923 (Conn. App. 2006) (discussing negligent credentialing but finding that the plaintiff had not produced evidence of the relevant standard of care); *Buckley v. Lovallo*, 481 A.2d 1286, 1289 (Conn. App. 1984) (same); *Murphy v. Blau*, No. CV095008059S, 2010 WL 745056, at *1 (Conn. Super. Ct. Jan. 26, 2010); *see*

---

of skill or proficiency in its screening, handling and dispensing of the blood in its blood bank but, rather, on [its] failure to apprise [Sherwood] about the condition of the blood and the options available to [her] under the circumstances." *Id.* at 788-89. The plaintiff's allegations with regard to the hospital's screening and handling of the blood were no longer at issue on appeal, and the court did not reach those issues. *See id.* at 794 n.23; *id.* at 785 n.11. But the court mentioned, without commenting on its correctness, the trial court's conclusion that the plaintiff may have a cognizable cause of action against the hospital for failing to make reasonable efforts to prevent blood transfusion risks, as distinguished from efforts to inform physicians or patients about risks, citing *Zichichi v. Middlesex Mem'l Hosp.*, 528 A.2d 805, 810-11 (Conn. 1987) ("If a plaintiff can show that the defect in the blood could reasonably have been detected or removed, the plaintiff may well be entitled to recover for the [supplying hospital's] negligent failure to detect or remove the defect."). *Sherwood*, 896 A.2d at 787 n.16.

[8] The complaint does not expressly allege that Saint Mary's knew or should have known about the physicians' histories, but it is reasonable to read Kenneson's allegation in that manner, especially within the larger context of the entire complaint, construed in the light most favorable to Kenneson.

*generally* Tort Claim for Negligent Credentialing of Physician, 98 A.L.R.5th 533 (2002). If using Prolene Mesh implants or other devices represented a significant deviation from accepted surgical methods, it is at least conceivable that under certain circumstances Saint Mary's might have had a duty to withhold privileges from physicians who had used those devices in the past and were continuing to do so.

That is not to say that Kenneson's claim *does* state a valid cause of action for negligent credentialing under Connecticut law. It is not this Court's role to recognize new or expanded causes of action under state law, and, as noted above, whether the complaint fails to state a claim is not the standard for fraudulent joinder. No Connecticut court has yet recognized the specific form of tort action asserted by Kenneson, and the contours of the tort of negligent credentialing are far from settled throughout the country. *See* 98 A.L.R.5th 533. Further, it may be difficult for Kenneson to establish that Saint Mary's should have revoked physicians' hospital privileges, in part or in whole, based on their histories of using medical devices that were dangerous, defective, recalled, or accompanied by FDA warnings. But for the purposes of analyzing fraudulent joinder, it is enough that Kenneson's negligent credentialing claim appears to be *possible* under Connecticut law and, unlike certain other theories of liability that Kenneson has advanced, has not been foreclosed by controlling authority.

The Court cannot conclude, based on the parties' submissions, that such a claim is impossible under Connecticut law. As a result, the defendants have not carried their burden of establishing fraudulent joinder; that is, they have not shown clear and convincing evidence that Kenneson has no possibility of stating a cause of action against Saint Mary's in state court. The motion to remand is therefore granted.

## IV. Plaintiff's Request for an Award of Attorney's Fees

"[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Attorney's fees are awarded "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin,* 546 U.S. at 140.

Given the complexity of the legal issues involved and the lack of controlling case law speaking to many of the questions raised by the defendants' removal in this case, the Court finds that the defendants had an objectively reasonable basis to believe that removal was proper, and that the defendants did not attempt to remove for the purpose of prolonging litigation and imposing costs on the opposing party. An award of attorney's fees is therefore inappropriate in this case.

## V. Conclusion

For the reasons above, the Motion for Remand (ECF No. 15) is GRANTED, except as to the plaintiff's request for attorney's fees. The Motions to Dismiss (ECF Nos. 25, 33) are DENIED as moot. The Clerk is directed to remand this case to Connecticut Superior Court.

**SO ORDERED** this 23rd day of April 2015, at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge